**Form 25. Petition for Post-Conviction Relief**
*Maricopa County*

Court Name or Location: _Superior Court_          County: _Maricopa_

**STATE OF ARIZONA, Plaintiff**

-vs-

_Reginald Desmond Trotter_
Defendant (FIRST, MI, LAST)

**INSTRUCTIONS TO THE DEFENDANT**

[CASE/COMPLAINT NO.]
_CR 2018-154642-001_

**PETITION FOR POST-
CONVICTION RELIEF UNDER
[ ] RULE 32
[√] RULE 33**

**CV-21-00298-PHX-MTL-JZB**

(1)     You must file a Notice Requesting Post-Conviction Relief (Form 24(b)) before you file this petition.
(2)     Answer the questions in this petition in readable handwriting or by typing. Use additional blank pages for completing your answers, if necessary, but write on only one side of the page.
(3)     Indicate above whether you are filing this petition under **Rule 32** or **Rule 33**. If you are filing under **Rule 32**, answer question **2**. If you are filing under **Rule 33**, answer question **3**.
(4)     Do not raise issues you have already raised on your appeal (if any) or in a previous petition for post-conviction relief (if any). Include in this petition every ground for relief you are aware of and that has not been raised and decided previously. If you do not raise such a ground now, you may not be able to raise it later.
(5)     File your completed petition with the clerk of the court where you were convicted and sentenced (or mail it to the clerk of that court for filing).

There are **time limits** for filing the petition.

• If you file under Rule 32, see the time limits in Rule 32.7.
• If you file under Rule 33, see the time limits in Rule 33.7.

**1.     INFORMATION ABOUT THE DEFENDANT**

Name: _Reginald Desmond Trotter_

√ FILED          ___ LODGED
___ RECEIVED          ___ COPY

FEB 1 6 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

Current Status: [ ] On Probation [√] Incarcerated [ ] On Parole [ ] On Community Supervision

Inmate number (if any): _341186_

**2.     RULE 32 GROUNDS FOR RELIEF**
Defendant claims the following grounds for relief.

[ ]     **Rule 32.1(a):** The Defendant's conviction was obtained, or the Defendant's sentence was imposed, in violation of the United States or Arizona constitutions, specifically:

   [√]     The Defendant was denied the constitutional right to representation by a **competent and effective lawyer** at every critical stage of the proceeding.

   [ ]     The State used evidence at trial it obtained during an **unlawful arrest**.

   [ ]     The State used evidence at trial it obtained during an **unconstitutional search and seizure**.

   [ ]     The State used an **identification** at trial that violated the Defendant's constitutional rights.

[✓] The State used a **coerced confession** at trial; used a statement obtained in the absence of a lawyer, at a time when representation by a lawyer was constitutionally required; or there was other infringement of the Defendant's right against self-incrimination.

[ ] The State **suppressed** favorable evidence.

[✓] The State used **perjured testimony**.

[ ] There was a violation of the Defendant's right not to be placed **twice in jeopardy** for the same offense or punished twice for the same act.

[ ] To determine the Defendant's sentence, the State used a **prior conviction** that was obtained in violation of the United States or Arizona constitutions or Arizona statutes.

[ ] The **abridgement of any other right** guaranteed by the constitution or the laws of this state, or the constitution of the United States, including a right that was not recognized as existing at the time of the trial if retrospective application of that right is required.

[ ] **Rule 32.1(b):** The court did not have subject matter **jurisdiction** to render a judgment or to impose a sentence on the Defendant.

[ ] **Rule 32.1(c):** The **sentence** is not authorized by law.

[ ] **Rule 32.1(d):** The Defendant continues to be or will continue to be in custody after his or her **sentence expired**.

[✓] **Rule 32.1(e):** Newly discovered **material facts** probably exist, and those facts probably would have changed the judgment or sentence.

[ ] **Rule 32.1(f):** The failure to **timely file** a notice of appeal was not the Defendant's fault.

[ ] **Rule 32.1(g):** There has been significant **change in the law** that, if applicable to the Defendant's case, would probably overturn the Defendant's conviction or sentence.

[ ] **Rule 32.1(h):** This petition demonstrates by **clear and convincing evidence** that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would find the Defendant guilty of the offense beyond a reasonable doubt, or that no reasonable fact-finder would find the defendant eligible for the death penalty in an aggravation phase held pursuant to A.R.S. § 13-752.

[ ] Any **other ground** within the scope of Rule 32, Rules of Criminal Procedure (Specify):

3.  **RULE 33 GROUNDS FOR RELIEF**
Defendant claims the following grounds for relief.

[ ] **Rule 33.1(a):** The Defendant's plea or admission to a probation violation was obtained, or the Defendant's sentence was imposed, in violation of the United States or Arizona constitutions.

[✓] The Defendant was denied the constitutional right to representation by a **competent and effective lawyer** at every critical stage of the proceeding.

[ ] There was a violation of the Defendant's right not to be **punished twice** for the same act.

[✓]    The **abridgement of any other right** guaranteed by the constitution or the laws of this state, or the constitution of the United States, including a right that was not recognized as existing at the time of the trial if retrospective application of that right is required.

[ ]    **Rule 33.1(b):** The court did not have subject matter **jurisdiction** to render a judgment or to impose a sentence on the Defendant.

[ ]    **Rule 33.1(c): The sentence** is not authorized by law or by the plea agreement.

[ ]    **Rule 33.1(d):** The Defendant continues to be or will continue to be in custody after his or her **sentence expired**.

[✓]    **Rule 33.1(e):** Newly discovered **material facts** probably exist, and those facts probably would have changed the judgment or sentence.

[ ]    **Rule 33.1(f):** The failure to **timely file** a notice of post-conviction was not the Defendant's fault.

[ ]    **Rule 33.1(g):** There has been a significant **change in the law** that, if applicable to the Defendant's case, would probably overturn the Defendant's conviction or sentence.

[✓]    **Rule 33.1(h):** This petition demonstrates by **clear and convincing evidence** that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would find the Defendant guilty of the offense beyond a reasonable doubt.

4.    **SUPPORTING FACTS AND DOCUMENTS**

A.    The Defendant submits the following **facts and legal authorities** in support of this petition. (Use additional pages if necessary.)

1. Defendant was wrongful Accused By Arresting officer
2. Arresting officer Planted Drugs on the Arrest of Defendant.
3. Arresting officer Fabricated there Cause to Inflict "Beating"
4. Beating/Tazing Defendant to wear death / unlawful Investigator stop!!
Cops That Brutally Beat me were on the Brady list

B.    Identify any newly discovered **material facts** in support of a claim for newly discovered evidence. Specify when the Defendant learned of these facts for the first time, and how they would have affected the trial or proceeding.

1. Defendant attorney Failed to Investigate / Present Evidence
2. Defendant attorney Coerced Defendant to Sign a Plea
3. Attorney stated to Defendant (I) would Be Found guilty Because I'm Black
4. Attorney told Defendant Even tho you Didnt touch them or Assault them You would Take Because your Black

C.    The following **affidavits, transcripts, and documents** are attached in support of the petition:

Affidavits [Exhibit(s) # _____None_____ ]

Transcripts [Exhibit(s) # _____( A - H )_____ ]

Documents [Exhibit(s) # _____THREE (4) page Attached_____ ]

**D.**     No affidavits, transcripts or other supporting documents are attached because:

_____

_____

_____

**5.**     **ACTIONS TAKEN**
The Defendant has taken the following actions to secure relief from his conviction or sentence:

**A.**     **Appeal?** [✓] **Yes** [ ] **No** (If yes, name the courts to which appeals were taken, date, number, and result.)

1. Hearing to withdraw from Plea Agreement In the Superior Court of the State of Az In the County of Maricopa

2. Post-Conviction Relief In the Superior Court of the State of Az In the County of Maricopa

**B.**     **Previous Post-Conviction Proceedings?** [✓] **Yes** [ ] **No** (If yes, name the court in which the previous petitions were filed, dates, and results. Include any appeals from decisions on those petitions.)

_____

_____

_____

**C.**     **Previous Habeas Corpus or Special Action Proceedings in the Courts of Arizona?** [ ] **Yes** [✓] **No** (If yes, name the courts in which such petitions were filed, dates, numbers, and results, including all appeals from decisions on such petitions.)

_____

_____

_____

**D.**     **Habeas Corpus or Other Petitions in Federal Courts?** [ ] **Yes** [✓] **No** (If yes, name the districts in which petitions were filed, dates, court numbers--civil action or miscellaneous, and results, including all appeals from decisions on such petitions.)

_____

_____

_____

E.   If the answers to one or more of the questions 5A, 5B, 5C, or 5D are "yes," explain why the issues that are raised in this petition have not been finally decided or raised before. (State facts.)

Because My lawyer Kyle Reedy and other legal Counsel didn't Represent Represent Me Correct, and The Court Been Giving Me the Run Around. was a lton I Have Clean Cut Evidence showing Ive Been Mess over By the Court and the Police Department.

6.   **RELIEF REQUESTED**

Because of the foregoing reasons, the relief which the petitioner requests is:

A.   [✓]   Release from custody and discharge.

B.   [ ]   A new trial.

C.   [ ]   Correction of sentence.

D.   [ ]   The right to file a delayed appeal.

E.   [✓]   Other relief (specify): I want all Charges Drop and Want Justice and Reimburse For Every day Ive Been In Cancerated

I declare under penalty of perjury that the information contained in this form and in any attachments is true to the best of my knowledge or belief.

02-08-2021
_____
Date

Rydel J Fulk
_____
Defendant

Thursday, June 18, 2020                 CR 2018-154642-001 DT
Reginald Desmond Trotter
Tucson - Whetstone                 **RECEIVED**
P.O. Box 24102
Tucson, Az 85734                   **JUL 2 3 2020**

                                   Prison Operations
                                   Division Directors Office

     Hello My Name is Reginald Desmond Trotter, ADC 341186
I was Assaulted On 11/08/18, Also I was Convicted On 01/09/2020
on Charges that I didn't Comment. On The Night of 11/08/18
I was walking Home, And I was Observed By Multiple Police
Officers.. I Continued to walk Home, while walking Home I
was Approached By Some One, who Flash A Bright light
In My Face.. I was Blinded, And Scared For My Life
Because I was in A Place That I wasn't Familiar with.. I didn't
Now who was Following Me, And The Person Never made Their
Present Known to Me.. I Attempted to Flee, And Tried To
Jump Over A Gate, But who ever was Following Me pulled Me
Back.. They Held Onto Me Untill Some One Else Came Around
The Gate in He let Me Go, while Falling off The Gate The
Dude Grab me in Body Slammed me, and They Both Started
Beating Me like A wild Animal.. They Held me On the Ground
nd Continued to Beat me Down.. while Screaming For
Help Some One Else Came and tased me in My lower Neck
Area.. The Assault lasted For 4 minutes I Thought I
was Going to Die, But God Save Me!!

     The Police Use Excessive Force On Me. I've Sustained
Injuries that will Never Heal I Have Seizures, Eye Issues

1/30 THE Police OFFicer Sustained Injuries From Str. King ME In the Face!! I Paid For a private attorney who Only agenda was to convicted ME of Crimes I didnt comment. I signed a plea That My lawyer Coerced ME Into Signing. I tried to withdraw My Plea, But My Judge over My Case denied My Request!!

Selective Prosecution Racial Profiling, Selective Enforcement, Fabricated Evidence, Also it was a unlawful Investory stop and a violation of My 14 Amendment Right, Due Process of a Unfair trail, I'm Begging For Help!! Please I didnt deserve THis type of treatment."

 For additional Information, Police Reports, OFFicer who were on the Brady list Photo's, and Body Cam Footage Please Contact"

Father : Reginald a. Trotter (602) 332-4027
 2401 East Pueblo Ave, PHx Az 85041

wife : Marli J Trotter (602) 403-2801
 93 W. HackBerry Ave San Tan Valley Az 85140

Sister : Nikkie J. Trotter (602) 380-9617

 THen also You Tube Video's and News articles and Cover Stories aBout what Happen !!

January 26, 2021

If I Had Noticed The InConsistant Agreements In Plea, I Could Had Won My Motion to withdraw plea.

Conviction Revered and Remanded Back to the Court.

InConsistant police Report Incident Reports Fabricated Evidence, Brady list material New Evidence.

Manifest of Injustice

The plea states probation was available and my Former lawyer "Kyle Reedy" Told me I would Get probation. But Once I Read the plea that Not true Because the Plea Says Stipulated to Department of Corrections. That Contradicts itself, there fore making it invalid.

States "Allegation of Defendants Felony" Allegation that Defendant was On adult felony Probation These, Shall Not Be Brought up Against The Defendent By the Maricopa Attorney's office

Any dismissed allegation May Be Considered
In Aggravating of any Sentence Permissible
Under the Plea.

THis is An Contradiction of the plea. THErefore,
THE Plea is invalid.

New Evidence Oral Arg. Nov 19 2019
(attorney wrong Information)

lawyer was A cora. Corrupt, Not aware of
Criminal Justice System Bad
(MR Reedy Attorney)

WalK to Jury People are too biased
Becaused my African American

I didut touch them officers at all,
I didut Flaned my arms!!

THey Beat the Crap out of me, Sustained
Injuries From assaulting Me.

Im dealing with So many PHysical and
Mental Issue From this Situation,

# EXHIBIT-A



# Incident/Investigation Report

Case Number: 2018-3110895

Agency: Mesa Police Department

## Narrative

On 11/07/2018 at approximately 2311 hours, I was dispatched to 115 N Beverly Rd, Mesa, AZ reference a subject running from Mesa Police Officers.

Upon arriving on scene, I observed several Officers inside the gated area of Beverly Park attempting to take a subject into custody. I jumped the fence into Beverly Park to assist with taking the male subject into custody but observed the male subject was already in hand cuffs. Mesa Fire and Medical was requested to our scene due to the subject being struck with an electronic control device (Taser) and receiving several hard hand strikes delivered by Officers. Mesa Fire and Medical engine 203 shift A arrived on scene shortly after.

I contacted Officer Solomon #20632 and Officer Oswald #20652 who told me the following. While on an unrelated incident at 1006 W Main St, Mesa, AZ they observed a male subject later identified as Reginald Trotter (DOB 08/29/1988) walking down a stair case. They observed the male look at them and then take of running toward Beverly Park. Reginald jumped the fence into Beverly Park and went in an unknown direction. Officer Oswald and Solomon decided to attempt to locate the male subject due to him being in the park after hours. Officer Oswald and Solomon located Reginald walking north on the east side Beverly Rd. They attempted to contact Reginald but he began climbing the fence to jump back into Beverly Park. Officer Oswald grabbed ahold of Reginald's shirt as he was jumping the fence but was not able to maintain control of him. At this point Officer Solomon jumped the fence into the park and grabbed ahold of Reginald.

Officer Solomon and Oswald attempted to take custody of Reginald but were unable due to Reginald flailed his arms back and forth. At this time Officer Ferrell #19387 arrived on scene to assist with taking Reginald into custody. While Reginald was failing his arms back and forth he struck Officers Solomon and Oswald. Officer Solomon and Oswald began delivering hard hand strikes and knee strikes in order to gain compliance from Reginald. The strikes were effective and assisted in taking Reginald into custody. It should be noted due to the amount of force used, three Officers were evaluated at Banner Gateway Hospital for possible injuries sustained during the incident.

Reginald was then transported to Banner Desert Medical Center for further treatment. While at the hospital I read Reginald his Miranda Rights, which he stated yes to understanding his rights and yes to answering my questions. I asked Reginald, why he ran from the Officers, which he stated he had a warrant and didn't want to go back to jail. I asked Reginald if at any point during the struggle he flailed his arms around, which he stated no. I asked Reginald if any illegal items would be located in his belongings, which he stated yes he has some "weed" located in his backpack. It should be noted "weed" is a common street term for Marijuana.

I was advised by Officer Solomon that a large glass mason jar filled with a green leafy substance was located inside Reginald's backpack along with a scale. Additionally, a large amount of US Currency was located inside Reginald wallet.

I asked Reginald if he had a medical Marijuana card, which he stated yes but he did not have the card on his person and did not remember his medical Marijuana ID number. I asked Reginald why he had the large amount of Marijuana in his possession, which he stated it was only 2.5 ounces, which is the amount he allowed to carry. I asked Reginald why he was in possession of a scale, which he stated he had it to make sure he had the correct amount. I asked Reginald why he had a large sum of money in his wallet, which he stated he is a personal trainer and receives cash

000007



# Incident/Investigation Report

Case Number: 2018-3110895

Agency: Mesa Police Department

## Narrative

payment.

Reginald was subsequently cleared and released from the hospital. I transported and booked Reginald into the Mesa City Jail without incident.2

Please see the following officer's supplements for further details regarding the incident.

-Officer Soloman #20632
-Officer Oswald #20652
-Officer Ferrell #19387

This concludes my involvement in this case

No further information

Cleared by arrest.

EXHIBIT-B



# Incident/Investigation Report
Case Number: 2018-3110895
Agency: Mesa Police Department

## Supplement Information

| Supplement Date | Supplement Type | Supplement Approving | Approval Date |
|---|---|---|---|
| 11/08/2018 00:03:30 | SCENE ASSIST | (19387) FERRELL, J | 11/08/2018 18:40:09 |
| | | Approving Supervisor (11948) RIORDAN, D | Approval Date 11/08/2018 20:25:27 |

## Supplement Notes

On the aforementioned date and time Officer Oswald, Solomon and I were patrolling the area of 1006 West Main Street Mesa, Arizona looking for a subject who had a felony warrant for his arrest and was a known gang member living in the complex. Officer Oswald advised us he observed a black male walking down the stairs to the building on the far northwest corner of the property at which time the black male jumped the fence into Beverly Park. Beverly Park closes at approximately 2200 hours. This complex is located within my area of responsibility and as such I have responded to a large volume of calls involving a variety of crimes. I have even responded to a homicide at this complex before and closely monitor known gang members who reside here. Therefore, I found the actions of the subject to be suspicious at best. Officer Oswald indicated he was going to contact the subject and exited the complex and began riding his department issued bicycle West on Main Street. I told Officer Solomon the warrants were good for the subject we were initially looking for and I located an apartment number for us to do a knock and talk tomorrow as our priority was now backing up Officer Oswald.

As I drove up North Beverly Street in the vicinity of Beverly Park located at 115 North Beverly Street I observed Officer Oswald contact the subject in question on the sidewalk in front of Beverly Park. The subject was later identified to me as Reginald Trotter. I observed Trotter quickly turn and attempt to jump the fence into Beverly Park. I advised police communications to hold the channel and that the bike units (Solomon and Oswald) had a subject running from them in Beverly Park (as It happened so quickly I did not get a good description of him to broadcast). I observed Officer Solomon hop the fence into the park to chase after Reginald Trotter. I hit my axon camera to record immediately while exiting my city of Mesa patrol vehicle (I was wearing a full police uniform) and I began running south on N. Beverly Street towards the entrance to the park.

Once I made the turn at the entrance of the park and began running north towards the Northwest corner of the park, I immediately observed both Officer Solomon and Oswald struggling mightily to subdue Trotter. They were both holding onto him desperately while yelling at him to stop resisting and screaming he was under arrest. All these verbal commands were ignored repeatedly by Trotter. As I begin getting closer I saw Trotter pull away from both officers at which time Officer Oswald was holding onto Trotters waistline while Officer Solomon was trying to grab Trotters right arm to get him back onto the ground and into handcuffs. Trotter was yelling repeatedly about how he had not done anything wrong. Trotter did not have a shirt on and his physique was muscular it was very evident he was physically fit.

When I got up to Officer Solomon and Oswald they were breathing very heavily as they were trying to throw their body weight over Trotter to pin him onto the ground. Trotter looked like a man possessed as he shrugged both of them off him as if they were little children wrestling with their big brother. Trotter started walking towards the fence again as if he was going to climb over it and escape. After a few steps Trotter was tackled to the ground yet again by Officer's Soloman and Oswald. Upon my arrival, I initially placed my right knee over Trotters left forearm to pin his left arm into the ground. However, Trotter was continuing to throw his weight around and with his right arm I saw him swing back and deliver an elbow which struck Officer Solomon's chest area. This allowed Trotter to begin to get up off the ground as the right side of his body was free temporarily. I grabbed my departmental issued Taser as I heard Officer Solomon asking me to Tase Trotter given his level of defiance. The Taser



# Incident/Investigation Report

### Case Number: 2018-3110895

### Agency: Mesa Police Department

was deployed in close proximity to Trotter striking him in his back and was rendered ineffective. The application of the taser appeared to actually upset Trotter even more as he was able to pull himself up from the ground and start moving towards the fence more which was 6-8 feet from where we initially were which was right next to the tree on the north west corner inside the park.

Trotter was yelling and screaming a series of incoherent statements and we began yelling and screaming over him that he was under arrest repeatedly and to stop resisting. At some point my Taser was knocked out of my hand during the altercation as I fell to the ground trying to pull Trotter with me. Trotter was violently swinging his elbows repeatedly at me and Officer Soloman in attempt to create distance and escape. This was even after being told multilpe times he was under arrest and to stop resisting. I was able to grab Trotters left wrist and he pulled away from me while Officer Solomon was delivering knee strikes to Trotter on the right side of his body to gain compliance as Officer Oswald was holding onto Trotters waist. Trotter was so strong he begin to start to push up off of the ground moving us yet again. I delivered a series of 2 to 3 close handed strikes to the head in which I struck Trotter on the left side of his face with my left hand. I found myself tired and out of breath and I could sense Officer Solomon was extremely tired as he had labored breathing while trying to deliver strikes to the right side of Trotters face and body. At one point I looked over and Trotter had his left fingers grasping onto the fence line and would not let go. It was if he was trying to use the fence to help him pull his body up off the ground. I literally thought to myself how is this guy still fighting with us after what appeared to be a very lengthy encounter. I was scared as I knew I had lost my Taser and was sure all three of us were extremely tired and suspected Trotter must be under the influence of a controlled substance as it appeared nothing we did affected him. I worried other equipment was in the area on the ground as I had seen some while literally rolling around trying to gain control of Trotter's hands. I feared Trotter would have access to this equipment and given his bizarre, irrational behavior. I knew I had to find more energy immediately to end this fight as he was in far superior physical condition than me and the other Officer's.

During one of the strikes to Trotter's face, I immediately felt discomfort and pain in my left hand however, Trotter was still actively resisting by throwing his arms,elbows and legs around and trying to kick his way out of Officers Oswald's grip on his waist. My axon camera became dislodged while I was on the ground fighting with Trotter and he threw his left hand back as if to swat me off him. I later found my camera on the ground near Trotter and started recording again once he was in handcuffs.

Realizing that my hand was possibly broke or injured, I changed strategies and repositioned myself by placing my left forearm near the left shoulder blade area of Trotter's back with my right hand closer to his waistline as I was laying on the ground. I then delivered 2 to 3 knee strikes utilizing my left knee striking Trotter on his left side in the abdominal area. This seemed to take his breath away temporarily. I jumped on the opportunity to grab his left hand and pull it behind his back. I was so exhausted at this point all I could was place my left knee and all of my body weight and strength left onto his back to ensure he could not get up. With me now firmly grasping Trotter's left hand and Officer Solomon holding his right hand Officer Oswald was able to place Trotter into handcuffs. Once secured in handcuffs we had to take the handcuffs off momentarily as my axon body camera cord had been dangling around and literally was handcuffed against Trotter's skin. Due the tense, rapidly evolving physical encounter I was unable to provide updates to police communications until the subject was subdued. Trotter was now yelling how he is aware of his rights and that we should have let him go.

As I stood up from fighting on the ground I collected my breath, composure and advised police communications to slow other units down I observed police equipment all over the ground to include my department issued taser, a magazine with ammunition, a ring and fabric pieces to Officer Solomon's vest which was also torn during the altercation. Upon Mesa Fire Engine 203's arrival I requested a bag of ice as I was pretty sure my hand was broken as it began to swell. I was later advised Trotter had a large amount of marijuana, narcotic drugs, currency and other items consistent with someone who maybe selling drugs and he is currently on felony probation and has two outstanding misdemeanor warrants for his arrest. AMR 213 responded and Trotter was transported to Banner Desert for additional medical attention.

I drove my patrol unit back to the main police station and Sergeant S. Nieto later transported me to Banner Baywood Hospital for additional medical treatment. I had an x-ray of my left hand and was advised my left index finger was broken and I was referred to a hand specialist. A CSS responded to our location and took photographs of our injuries for documentation purposes. I did not utilize any other force during this incident and my actions were essential to perform my official duties while protecting myself, my fellow Officers and the citizens of Mesa from the



# Incident/Investigation Report

**Case Number:** 2018-3110895

**Agency:** Mesa Police Department

disturbing actions Trotter engaged us with from the onset. My actions are in accordance with established policies and procedures and as permitted by law.





# Incident/Investigation Report

**Case Number:** 2018-3110895

**Agency:** Mesa Police Department

## Supplement Information

| Supplement Date | Supplement Type | Supplement Approving | Approval Date |
|---|---|---|---|
| 11/08/2018 04:36:27 | INFORMATION ONLY | (22475) STEARMAN, T | 11/08/2018 04:39:30 |
| | | Approving Supervisor | Approval Date |
| | | (10915) HILL JR., T | 11/08/2018 11:06:26 |

## Supplement Notes

On 11-08-2018 at the Mesa Holding Facility, Officer Oswald #20652 requested field drug testing be performed on a green leafy substance. Field drug testing was performed, and the results of the test indicated the presence of marijuana. A Mesa Police Department forensic services controlled substances affidavit form was issued to Officer Oswald #20652.



# Incident/Investigation Report
### Case Number: 2018-3110895
### Agency:  Mesa Police Department

## Supplement Information

| Supplement Date | Supplement Type | Supplement Approving | Approval Date |
|---|---|---|---|
| 11/08/2018 04:39:40 | INFORMATION ONLY | (22475) STEARMAN, T | 11/08/2018 04:42:07 |
| | | Approving Supervisor | Approval Date |
| | | (10915) HILL JR., T | 11/08/2018 11:06:41 |

## Supplement Notes

On 11-08-2018 at the Mesa Holding Facility, Officer Oswald #20652 requested field drug testing be performed on a white powder substance. Field drug testing was performed on TruNarc S/N 4186, Scan #2682 and the results of the test indicated the presence of Cocaine hci.  A Mesa Police Department forensic services controlled substances affidavit form was issued to Officer Oswald #20652.

000013





# Incident/Investigation Report
### Case Number: 2018-3110895
### Agency: Mesa Police Department

## Supplement Information

| Supplement Date | Supplement Type | Supplement Approving | Approval Date |
|---|---|---|---|
| 11/08/2018 04:46:17 | INVESTIGATION | (20652) OSWALD, N | 11/08/2018 16:58:36 |
| | | Approving Supervisor | Approval Date |
| | | (14972) NIETO, S | 11/08/2018 17:23:36 |

## Supplement Notes

It should be noted, during this investigation, I was wearing an on-officer body camera and the digital video file was downloaded and stored at evidence.com.

On November 7, 2018 at approximately 2311 hours, I was conducting routine patrol at 1006 W. Main St. (Hidden Village Apartments) along with Officer Solomon #20632. Officer Solomon and I were riding as a bicycle unit wearing fully marked patrol uniforms and marked police bicycles. Officer Ferrell #19387 was present with us in his fully marked police vehicle.

The area we were patrolling in is known for its high volume of criminal activity. Patrol officers, street crime detectives, gang detectives and community action detectives have made numerous drug and drug related arrests in this troubled area. For example: possession of dangerous and/or narcotic drugs for sale, possession of a narcotic drugs, possession of a dangerous drugs, possession of drug paraphernalia, driving with a suspended driver's license, theft, forgery and numerous felony and misdemeanor warrants. It is common to find illegal activity in this area. As part of the Central Patrol Bike Unit, it is common for us to patrol the area in search of illegal activity.

While at the north end of the apartment complex, I observed a male subject walked down stairs from the apartments. Once on the bottom floor, the subject proceeded casually through the parking lot. I observed the subject look up at the multiple officer's present and began to run to the north fence of the property. The subject jumped over the fence and then into Beverly Park. The park was currently closed and the subject was now in violation of Mesa City Code 6-10-2.A In a park after hours C1M.

Based on the subject's suspicious behavior and the city code violation I proceeded to the west side of Beverly Park (115 N. Beverly) to attempt to contact the subject. As I rode my bicycle north bound on Beverly from Main St, followed by Officer Solomon and Officer Ferrell. I observed the subject jump over the fence from Beverly Park onto the sidewalk on Beverly St. The subject was walking north bound and I contacted him outside of the park on the northern end. I identified myself as Mesa Police and told the subject to stop. The subject turned around to face me and then immediately began to jump over the fence back into Beverly Park. I was able to grab onto one of the subject's articles of clothing and slow him down as he attempted to flee from me. At this time, Officer Solomon jumped over the fence and grabbed the subject in attempt to detain him. Once Officer Solomon made physical contact with the subject, the subject began to push and pull erratically away from Officer Solomon. I immediately jumped over the fence to assist Officer Solomon. I attempted to use control holds on the subject's arms and body, but they were ineffective. Officer Solomon and I gave the subject multiple verbal commands to stop resisting, get on the ground, and place his arms behind his back. The subject ignored all commands and I felt he was using all his body strength to physically fight. I tried to maintain control of the subject's right arm as I was fearing he would attempt to strike officer's or gain possession of a weapon he might have or one of our department issued firearms or other less lethal weapons. Officer Ferrell responded and gave the subject multiple commands as well, but he continued to ignore them. Officer Ferrell deployed his taser into the subject's back, but it was unsuccessful or had very little effect for compliance. We continued to try to wrestle the subject to the ground including an attempt to hold onto his waistline to bring him back to the ground, but the subject was able to get up to his feet



# Incident/Investigation Report
### Case Number: 2018-3110895
### Agency: Mesa Police Department

multiple times. Due to extreme physical fatigue I began to feel and could sense the other officer's as well were loosing their physical strength and believing the subject was gaining a physical advantage, I struck the subject in the body with multiple closed fist strikes and knee strikes in hope's to end the altercation. Officer Solomon and Officer Ferrell began to strike the subject as well. After approximately two minutes of wrestling and fighting with the subject we were able to successfully detain him in handcuffs at approximately 2315 hours. I believe the force used was effective and necessary to end the altercation quickly without major injuries considering the length of the fight and the stress and fatigue endured by all involved. See Officer Solomon and Officer Ferrell's supplements for further details.

Mesa Fire was immediately dispatched to the scene to provide medical attention to the subject. Mesa Fire Engine 203 and AMR 213 responded to the scene and the subject was transported to Banner Desert Medical Center. The subject was followed by Officer Lopez #19867. See Officer Lopez' incident report for further details.

Search incident to arrest, we were able to identify the subject as (SU) Reginald Trotter from personal property in his backpack. His identify was confirmed by MVD information and photo. Trotter had two warrants for his arrest out of Mesa City Court and DPS. The warrant out of Mesa City Court was confirmed by dispatch.

Trotter had the following inside the backpack he was wearing: A large glass jar containing a large amount of a green leafy substance. Three individually wrapped baggies of a white powdery substance. A digital pocket scale. A wallet containing $272 of cash. An expired medical marijuana card. An Arizona ID card belonging to "Christian Nunley".

The green leafy substance and white powder substance were field tested by Detention Officer Stearman #22475 and positively identified as marijuana and cocaine. The illegal drugs were placed into MPD property as evidence.
Trotter was cleared of any major injuries by Dr. Miller from Banner Desert Hospital. Trotter sustained swelling and abrasion to his left eye. Trotter had puncture wounds from the taser probes in his upper back. Trotter complained of right shoulder pain, right chest pain, and abdominal pain. CSS Vasquez #22020 responded to the hospital for photographs of Trotters injuries.

Sgt. Nieto #14972 responded to the scene and was briefed on the incident. Officer Ferrell, Officer Solomon, and I were transported to Banner Gateway Medical Center for medical attention. Officer Farrell suffered a broken finger on his left hand from the physical altercation. Officer Solomon had a sprained left index finger and abrasions to both knees. I had soreness and abrasions to my left hand and abrasions on both knees and elbows. During the altercation Officer Solomon's Axon body camera was ripped off his body and broken. During the altercation my watch was ripped off my wrist and broken. CSS Vasquez responded to Banner Gateway Hospital to photograph our injuries and damaged items.

Officer Lopez transported Trotter back to Mesa City Jail where he was booked on violations of (3) Counts ARS 13-1204A8A AGG ASSAULT-LAW ENFORCEMENT C4F, ARS 13-2508A2 RESIST ARREST RISK PHYSICAL INJ C6F, ARS 13-3408A2 NARCOTIC DRUG FPR SALE C2F, ARS 13-3408A1 POSS NARCOTIC DRUG C4F, ARS 13-3405A2 MARIJUANA FOR SALE C4F, ARS 13-3405A1 POSSESSION OF MARIJUANA C6F, ARS 13-3415A POSSESSION OF DRUG PARAPHERNALIA C6F, (2) Counts ARS 13-1602A1 CRIMINAL DAMAGE C1M, MESA CITY CODE 6-10-2A PARK AFTER HOURS C1M.

N.F.I.

Cleared Arrest.

---

# EXHIBIT-E



# Incident/Investigation Report

## Case Number: 2018-3110895

### Agency: Mesa Police Department

# Supplement Information

| Supplement Date | Supplement Type | Supplement Approving | Approval Date |
|---|---|---|---|
| 11/08/2018 17:54:25 | SCENE ASSIST | (20632) SOLOMON, B | 11/08/2018 18:04:45 |
| | | Approving Supervisor | Approval Date |
| | | (14972) NIETO, S | 11/08/2018 18:05:08 |

# Supplement Notes

The area I contacted Reginald Trotter is known for its high volume of criminal activity. Patrol officers, street crime detectives, gang detectives and I have made numerous drug and drug related arrests in this troubled area. For example: possession of dangerous and/or narcotic drugs for sale, possession of a narcotic drugs, possession of a dangerous drugs, possession of drug paraphernalia, driving with a suspended driver's license, theft, forgery and numerous felony and misdemeanor warrants. It is common to find illegal activity in this area. As part of the Bike Unit it is our main responsibility to patrol this area for illegal activity.

My axon camera did not capture the following events as it was disconnected from my uniform and broken into several pieces. I do clearly remember attempting to activate the camera but believe this was useless as the camera was damaged. The events were however captured by assisting officers.

On 11-7-2018, I assisted in the arrest of Reginald Trotter on multiple felony and misdemeanor charges.

At about 2300 hours, Officer Oswald, Officer Ferrell, and myself were in the north parking lot of 1006 W. Main. Officer Oswald and I were wearing fully marked Police uniforms and bicycles. We were looking for a subject we knew to have felony warrants. As we used Police resources to look up possible apartment numbers, Officer Oswald stated he observed a person jump the fence into Beverly Park which closed at about 2200 hours.

Officer Oswald left to go contact the subject. Officer Ferrell and I remained stationary just a little longer until we found the information we were looking for on the first subject. Officer Oswald had a significant head start towards the park. Officer Ferrell was in a fully marked Police vehicle and was able to catch up quickly.

I rode my bicycle south to Main St, west to Beverly, then north towards 115 N. Beverly. As I was a distance behind Officer Oswald, I exerted myself to catch up. As I hurried up to where Officer Oswald was, I observed Officer Oswald attempted to stop the subject walking north on Beverly on the east sidewalk. Before I even dismounted my bike, the subject had jumped the fence back into Beverly Park. Officer Oswald had grabbed his clothing and Reginald Trotter (later identified by MVD record) was hanging by his pants. I jumped the fence as quickly as I could. I noticed my legs already felt exhausted after peddling as strong as I did. I grabbed Trotter just as he fell to the ground inside the park. I knew if I could just hold Trotter down until Officer Oswald scaled the fence, taking Trotter into custody would be more ideal and tactically safe. Trotter began to thrash around violently. He was able to get to his feet as Officer Oswald joined the altercation. I grabbed hold of his left arm. Officer Oswald grabbed his right. Trotter began thrusting his arm around in a freestyle swimming motion to get his arm free. As he did so, he struck me in the chest and knocked my radio from its position. I was unable to call for additional help or let responding units where we were located. I yelled over and over to get on the ground and put his hands behind his back. This was completely ineffective as Trotter was yelling something along the lines of, "get off me." It was clear he did not want to cooperate and obey our commands. He made it very clear he had no intention of submitting to



# Incident/Investigation Report

### Case Number: 2018-3110895

### Agency: Mesa Police Department

us and was going to use any means possible to avoid arrest and free himself.

Several times we fell to the ground but Trotter, using incredible strength, was able to lift himself, Officer Oswald, and myself back to a standing position.

As the altercation dragged on for what appeared to be a long time, I realized no efforts or uses of force to this point had proven successful. I was beginning to fatigue.

I administered 3-4 left handed fist strikes to Trotter's left side. As I was striking him, I felt a pop in my left index finger. After the altercation, my hand began to swell and hurt. Banner Gateway provided X-rays and informed me I hand sprained my hand.

I believe the fist strikes proved ineffective because Trotter continued to fight us and do everything in his power to free himself and get away.

Officer Ferrell arrived to help, and I requested he Taser Trotter. I was becoming even more fatigued and Trotter showed no sign of slowing. I believe the taser was ineffective because Trotter continued the same bizarre and aggravated behavior.

During the altercation, I lost two ammo magazines and ripped my vest. Officer Ferrell's Taser was knocked to the ground and was unsecured. Being as it fell to the ground, any of these items could have been accessed by Trotter. During the altercation, body positions changed so frequently, Trotter was within distance to access our utility belts and firearms. It is very difficult to subdue a motivated suspect while trying to maintain weapon retention, juggle the radio, and work together with other officers while trying to avoid injuries to all parties involved.

Once again, we fell to the ground, I fell over to Trotter's right side. I fell between a berm and the chain link fence. Being even more fatigued, it was all I could to just hold onto Trotter as Officer Oswald and Officer Ferrell continued to struggle in attempted to subdue. Briefly I caught my breath and continued in the struggle. Trotter had managed to get his right arm free and was pulling on the fence trying to pull himself up and away. The fight to this point had lasted over about one and a half minutes. Realizing something had to be done or the risk of injuries to all involved would grow exponentially. I grabbed Trotter's head and gave 3 or more right knee strikes to his head. I felt like I was fighting underwater as I was so fatigued and could feel my lungs being exerted to their limits. I believe the strikes were effective as we were able to finally wrestle his wrists into handcuffs and end the physical altercation.

No additional force was used during the altercation. Apart from the control holds, fist strikes, and knee strikes, I did not use additional force. No impact weapons of chemical agents were used. I believe the force used was eventually effective as he was taken into custody.

Additional officer arrived on scene and relieved us as I gathered my missing equipment and tried to catch my breath. My axon camera was completely broken and the internal components were now exposed. My vest had ripped where my radio holds and appeared to be unrepairable.

Mesa Fire arrived on scene and Trotter was transported to the hospital. See Officer Oswald report for further details.

I had sustained multiple lacerations to my lower legs and noticed a pain radiating from my right elbow. Follow up at the hospital, doctors informed me I had sprained my hand. Officer Oswald and Officer Ferrell had both sustained injuries.

An AZ ID card for Christian Nunley was located in Trotter's property. I will conduct follow up to locate him and interview him.

NFI.

# EXHIBIT-F





































# EXHIBIT-G







































































Patient Name: TROTTER, REGINALD DESMOND
Date of Birth: 8/29/1988 13:01 MST
MRN: 1793648; 1935895
FIN: 86458734

* Auth (Verified) *

| ⏱ 11/08/2018 12:00 AM | AMR | → Banner Desert Medical Center | pg 2 of 6 |



AMERICAN MEDICAL
PRE-HOSPITA



TROTTER, REGINALD DESMOND
| MR | 001935895 | 08/29/88 |
| SVC | EER | M | 030Y |
| Acct | 00086458734 | 11/07/18 |
| BDMC | | BANNER LABEL |

Case #: 18788847     Unit ID: AP213     Date: 11/7/2018

| SERVICE | DISPATCH INFORMATION | TIMES | |
|---|---|---|---|
| FROM:<br>115 NORTH BEVERLY<br>MESA, AZ 85201<br>(ROADWAY) | RESPONSE MODE: NO LIGHTS AND SIREN<br>TRANSPORT MODE: NO LIGHTS AND SIREN<br>ALS ASSESSMENT: FIRE PARAMEDIC<br>DISPOSITION: TRANSPORTED - TO HOSPITAL<br>ER/ED | CALL RECEIVED: | 23:15:00 |
| | | DISPATCHED: | 23:15:00 |
| | | ENROUTE: | 23:16:00 |
| | | AT SCENE: | 23:22:00 |
| | | AT PT SIDE: | 23:23:00 |
| TO: BANNER DESERT MEDICAL CENTER<br>1400 S DOBSON RD<br>MESA, AZ 85202<br>(HOSPITAL - ED)<br>ROOM/DEPT: HOSPITAL-EMERGENCY<br>DEPARTMENT<br>DESTINATION DECISION: CLOSEST/MOST<br>APPROPRIATE | | TRANSPORT: | 23:30:00 |
| | | ARRIVAL: | 23:37:00 |
| | | CARE TRANS'D: | 11/8/2018<br>12:10:00 AM |
| | | AVAILABLE: | 00:20:00 |
| | | DEST MILES: | 3 |
| | | TOTAL MILES: | 3 |

**PATIENT DEMOGRAPHICS**

| | |
|---|---|
| NAME: TROTTER, REGINALD | DOB: 8/29/1988 |
| ADDRESS: 2401 E PUEBLO ST | AGE: 30 |
| | GENDER: MALE |
| CITY, STATE ZIP: MESA, AZ 85201 | ETHNICITY:<br>BLACK/AFRICAN<br>AMERICAN |
| PHONE: | |
| CELL PHONE: | |
| SSN: xxx-xx-9807 | |

| INSURANCE | POLICY | GROUP |
|---|---|---|
| SELF PAY | 85207140 | |

| RESPONSIBLE PARTY: TROTTER, REGINALD | NAME OF EMPLOYER: |
|---|---|
| PHONE: | EMPLOYER PHONE: |
| HOSPITAL MRN: | |
| HOSPITAL FIN: | |

**MEDICAL HISTORY**

| | |
|---|---|
| HISTORY OBTAINED FROM: | NOT OBTAINED |
| MEDICAL HISTORY: UNKNOWN | |
| ALLERGIES: NOT KNOWN, | |
| ALLERGY DESCRIPTION: | |
| MEDICATIONS: UNKNOWN | |

**HISTORY OF PRESENT ILLNESS:**

CHIEF COMPLAINTS

PT. STATED COMPLAINT: FACE PAIN, CHIEF COMPLAINT CATEGORY: PAIN

Case #: 18788847     1

| Date of Service: 11/07/2018 | Page: 1 of 3 |
|---|---|
| Patient: REGINALD Trotter | Printed : 11/8/2018 |

1604 Amb Air Vac Run Sheet

Patient Name: TROTTER, REGINALD DESMOND
Date of Birth: 8/29/1988 13:01 MST

MRN: 1793648; 1935895
FIN: 86458734

**\* Auth (Verified) \***

🕐 11/08/2018 12:00 AM        AMR        →Banner Desert Medical Center        pg 3 of 6

## PHYSICAL FINDINGS

WEIGHT: 160 LBS;  72 KG

PHYSICAL ASSESSMENT

HEAD: ']

LEFT EYE

POSITIVE: CONTUSION/ECCHYMOSIS, PAIN

LEFT TEMPORAL SKULL/SCALP

POSITIVE: PAIN

NECK: NO JVD

CHEST: SYMMETRIC WITH BILATERAL CHEST RISE

ABDOMEN: SOFT, NON-TENDER

PELVIS: STABLE

BACK: SYMMETRIC

EXTREMITIES: FULLY INTACT, PURPOSEFUL MOVEMENT

```
TROTTER, REGINALD DESMOND
MR    001935895    08/29/88
SVC       EER      M    030Y
Acct  00086458734    11/07/18
BDMC          BANNER LABEL
```

## IMPRESSION

PRIMARY IMPRESSION:  PAIN - HEAD

SECONDARY IMPRESSION:  TRAUMA - HEAD INJURY

Other Impression

## VITAL SIGNS

| TIME | BLOOD PRESSURE | PULSE | RESP | GLASGOW COMA SCALE E | V | M | TOTAL | EKG | SP02 | BLOOD GLUCOSE | PAIN SCALE |
|------|----------------|-------|------|----------------------|---|---|-------|-----|------|---------------|------------|
| 23:23 | 139/79 (99) | 120 | 22 | 4 | 4 | 6 | 14 | | | | |
| 23:30 | 134/72 (93) | 114 | 20 | 4 | 4 | 6 | 14 | Sinus Tachycardia | | | |

## TREATMENTS

| PTA | TIME | CAREGIVER | PROCEDURE |
|-----|------|-----------|-----------|
| | 23:23 | MESA FIRE AND MEDICAL DEPARTMENT | VITAL SIGNS - |
| | | | **GLASGOW COMA SCALE** GCS EYES: 4; GCS VERBAL: 4; GCS MOTOR: 6; GCS SCORE: 14; GCS SCORE QUALIFIER: NO QUALIFIER |
| | | | **VITALS** BP: 139/79; PULSE: 120; PULSE REGULARITY: REGULAR; PULSE STRENGTH: NORMAL; PULSE TAKEN AT: CARDIAC MONITOR; RESPIRATORY RATE: 22; RESPIRATORY DEPTH: NORMAL; RESPIRATORY EFFORT: NORMAL |
| | 23:30 | TIPNER, JANESSA,AMR | **EKG/ECG** INDICATION: PROTOCOL/STANDING ORDER; TYPE: 12 LEAD; CLINICIAN INTERPRETATION: SINUS TACHYCARDIA; ELEVATION: FALSE; DEPRESSION: FALSE |
| | 23:30 | MESA FIRE AND MEDICAL DEPARTMENT | VITAL SIGNS - |
| | | | **GLASGOW COMA SCALE** GCS EYES: 4; GCS VERBAL: 4; GCS MOTOR: 6; GCS SCORE: 14; GCS SCORE QUALIFIER: NO QUALIFIER |
| | | | **VITALS** BP: 134/72; PULSE: 114; PULSE REGULARITY: REGULAR; PULSE STRENGTH: NORMAL; PULSE TAKEN AT: CARDIAC MONITOR; RESPIRATORY RATE: 20; RESPIRATORY DEPTH: NORMAL; RESPIRATORY EFFORT: NORMAL |

## NARRATIVE

AMR AP213 DISPATCHED TO SCENE. MESA FD ON SCENE ESTABLISHED PT ASSESSMENT AND CARE AND MAINTAINED THROUGHOUT ENTIRE TRANSPORT. PT FOUND LYING SUPINE ON GROUND HANDCUFFED AND IN POLICE CUSTODY. PD STATES PT WAS TACKLED TO THE GROUND AND TAZED IN HIS BACK. BARBS WERE REMOVED PRIOR TO CREWS ARRIVAL. POLICE STATE PT WAS COMBATIVE. PT WAS HIT IN THE FACE BY POLICE PRIOR TO CREWS ARRIVAL. PTS L EYE IS SWOLLEN SHUT AND PT IS C/O PAIN TO HIS L TEMPLE AREA. TEMPLE AREA IS RED AND SWOLLEN. PT ALSO HAS AN ABRASION IN R CORNER OF HIS LIPS. PT C/O LOWER BACK PAIN FROM THE SCUFFLE AS WELL. PT IS A & O 1/4 AND STATES HE SMOKED MARIJUANA TODAY AND DRANK ALCOHOL BUT DENIES ANY OTHER DRUGS. NO OTHER DEFORMITIES OR ABNORMALITES WERE OBSERVED UPON TRAUMA ASSESSMENT. PT DENIES ANY NECK PAIN. PT WAS TRANSFERRED TO COT WITHOUT INCIDENT AND SECURED WITH BELTS AND RAILS. PT REMAINED HANDCUFFED ON GURNEY. PT CARE WAS MAINTAINED THROUGHOUT TRANSPORT WITH NO FURTHER CHANGES IN PTS CONDITION. AT DESTINATION, PT WAS TRANSFERRED TO ER BED 3 WITHOUT INCIDENT, HANDCUFFS WERE REMOVED BY PD, AND CARE WAS TRANSFERRED TO RN.

Case #: 18788847
PCR: 20181107233363727071
Device: SCAZMEDS032

Date of Service: 11/07/2018
Patient: REGINALD Trotter

Page: 2 of 3
Printed : 11/8/2018

Patient Name: TROTTER, REGINALD DESMOND                                                    MRN: 1793648; 1935895
Date of Birth: 8/29/1988 13:01 MST                                                         FIN: 86458734

* Auth (Verified) *

🕐 11/08/2018 12:00 AM          AMR            → Banner Desert Medical Center          pg 4 of 6

**RUN COMPLETION**

OTHER CAREGIVERS

CAREGIVER NAME:

CERTIFICATION:

AGENCY:  Mesa Fire and Medical Department

ROLE:

TROTTER, REGINALD DESMOND
MR   001935895     08/29/88
SVC      EER      M    030Y
Acct  00086458734   11/07/18
BDMC    BANNER LABEL

PRIVACY PRACTICES:  THE NOTICE OF PRIVACY PRACTICES WAS UNABLE TO BE PROVIDED

Case #: 18788847                    Date of Service: 11/07/2018          Page: 3 of 3
PCR: 2018110723363727071            Patient: REGINALD Trotter            Printed : 11/8/2018
Device: SCAZMEDS032

Patient Name: TROTTER, REGINALD DESMOND
Date of Birth: 8/29/1988 13:01 MST

MRN: 1793648; 1935895
FIN: 86458734

* Auth (Verified) *

| 🕐 11/08/2018 12:00 AM | AMR | → Banner Desert Medical Center | pg 5 of 6 |

AMERICAN MEDICAL
PRE-HOSPITAL CARI
MARIC

TROTTER, REGINALD DESMOND
MR    001935895    08/29/88
SVC    EER    M    030Y
Acct    00086458734    11/07/18
BDMC    BANNER LABEL

Case #: 18788847              Unit ID: AP213                         Date: 11/7/2018

**CREW MEMBERS**

CREW 1
NAME: TIPNER, JANESSA,AMR
NUMBER: P98283985
CERTIFICATION: Paramedic +

CREW 2
NAME: CRAWFORD,
MARSHALL,AMR
NUMBER: E24887693
CERTIFICATION: EMT

**OTHER CAREGIVERS**

NAME: LI
AGENCY: Mesa Fire and Medical
Department
CERTIFICATION: LI
REASON FOR OTHER CAREGIVER:

**DESTINATION**

TURNED OVER TO: RYAN

Case #: 18788847
PCR: 2018110723363727071

Date of Service: 11/07/2018
Patient: REGINALD Trotter

Page: 1 of 1
Printed: 11/8/2018

**Banner Health**
BANNER DESERT MEDICAL CENTER
1400 S. Dobson Road
Mesa, AZ 85202-4707

**Patient:** TROTTER, REGINALD DESMOND
**DOB:**  8/29/1988  **Sex:** Male            **Age:** 30 years
**MR#:**  1935895
**Patient Location:** 05 EER
**Attending Physician:**  MILLER MD,SHANNON

---

## ED REPORTS

| | |
|---|---|
| Respiratory Rate | 18 br/min |
| Systolic Blood Pressure | 127 mmHg |
| Diastolic Blood Pressure | 74 mmHg |
| SpO2 | 96 % |
| Oxygen Therapy | Room air |

Assessment: Patient was subconjunctival hemorrhage and abrasion with ecchymosis after fluorescent staining performed by PA Amanda .
Time: 11/08/2018 04:35 .
Vital signs
    results included from flowsheet : BASIC VITAL SIGNS

| 11/08/2018 00:17 MST | | |
|---|---|---|
| | AVPU | Alert and responsive |
| | Temp C | 36.8 DegC |
| | Heart Rate | 97 bpm |
| | HR Site | Monitor |
| | Respiratory Rate | 18 br/min |
| | Systolic Blood Pressure | 127 mmHg |
| | Diastolic Blood Pressure | 74 mmHg |
| | SpO2 | 96 % |
| | Oxygen Therapy | Room air |

Assessment: reassessed the patient. Patient denies any new complaints, etiology of patient's symptoms is not clear. I discussed the diagnostic testing
    results with the patient. The patient is hemodynamically stable with excellent saturations on room air, afebrile, nontoxic appearing, neurovascularly
    intact without any sign of acute life-threatening illness based on his presentation and evaluation here today, so I think we can safely discharge the
    patient home at this time and have him followup with his primary care doctor or Adelante clinic in 2-3 days for a recheck, further evaluation and
    treatment without fail. Patient was advised on warning signs for return the ER including, but not limited to, increasing pain/shortness of breath, fevers,
    persistent vomiting, weakness/numbness/tingling in the extremities any other worsening or worrisome symptoms. Patient voiced understanding of the
    above and agrees..

**Impression and Plan**
    Facial contusion, Facial abrasion, Taser, Right shoulder sprain, Right chest wall contusion, Blunt abdomen contusion, Drug abuse, Corneal abrasion

    **Calls-Consults**
    **Plan**
        **Condition:** Improved, Stable.
        **Disposition:** Medically cleared, Discharged: to police.
        **Prescriptions:** Launch prescriptions
        Pharmacy:
            ciprofloxacin ophthalmic 0.3% solution (Prescribe): 1 drop, Eye-Left, Q2h-interval, for 2 days, while awake, 5 mL, 0 Refill(s).
        **Patient was given the following educational materials:** SPRAIN SHOULDER, DRUG ABUSE, General, ABRASION, FACIAL CONTUSION, no
            wakeup, CHEST WALL CONTUSION, CORNEAL ABRASION.
        **Follow up with:** Return to Emergency Department Return to the ED should your symptoms worsen or if there is any cause for concern; Adelante
            Healthcare - Mesa Within 1 - 2 days Follow up with Adelante Healthcare within 1-2 days for reevaluation of your symptoms..
        **Counseled:** Patient, Regarding diagnosis, Regarding diagnostic results, Regarding treatment plan, Regarding prescription, Patient indicated
            understanding of instructions.
        **Notes:** I have reviewed all documentation entered above by the scribe and made any needed modifications.  I agree with and validate all of the
            contents of this document , 11/08/2018 02:50.

---